IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.* FRANK C. FOY
AND SUZANNE B. FOY,

    *Qui tam* Plaintiffs,

v.                                                   Cause No. CV 09-00178 RB/LFG

VANDERBILT CAPITAL ADVISORS, LLC;
VANDERBILT FINANCIAL, LLC;
VANDERBILT FINANCIAL TRUST;
OSBERT M. HOOD; RON D. KESSINGER;
ROBERT P. NAULT; JAMES R. STERN;
PATRICK A. LIVNEY; STEPHEN C. BERNHARDT;
KURT W. FLORIAN, JR.; ANTHONY J. KOENIG, JR.;
MARK E. BRADLEY; PIONEER INVESTMENT
MANAGEMENT U.S.A., INC.;
PIONEER GLOBAL ASSET MANAGEMENT S.P.A.;
UNICREDITO ITALIANO, S.P.A.;
KATTEN MUCHIN ROSENMAN LLP;
RICHARDS, LAYTON & FINGER, P.A.;
CLIFFORD CHANCE US, LLP; ERNST & YOUNG LLP;
PRICE WATERHOUSE COOPERS; BRUCE MALOTT;
MEYNERS + CO; GARY BLAND; CITIGROUP;
CITIGROUP GLOBAL MARKETS INC.;
BEAR, STEARNS & CO. INC.;UBS INVESTMENT BANK;
UBS SECURITIES LLC; CALYON CREDIT AGRICOLE CIB;
CREDIT AGRICOLE SA; JEFFERIES CAPITAL MANAGEMENT, INC.;
FORTIS SECURITIES LLC; FORTIS NV; ACA MANAGEMENT, L.L.C.;
J.P. MORGAN CHASE BANK, N.A.; ABN AMRO, INC.;
STONE CASTLE SECURITIES, L.L.C., AND JOHN DOE #1;
JOHN DOE #2; and JOHN DOE #3 THROUGH #50,

    Defendants.

### DEFENDANT BRUCE MALOTT'S MOTION TO DISMISS
### AND SUPPORTING MEMORANDUM

    COMES NOW Defendant Bruce Malott, through his undersigned counsel, the

Narvaez Law Firm, P.A., and, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), states that

Plaintiffs' Complaint Under the Fraud Against Taxpayers Act ("Complaint") fails to state

a claim against him upon which relief may be granted and that this Court lacks

1

jurisdiction to consider at least some of the claims asserted. Therefore, the Complaint should be dismissed. In further support of his Motion, Malott states as follows:

## I.

## Introduction

Plaintiffs bring this *qui tam* action based on the Fraud Against Taxpayers Act ("FATA"), NMSA 1978, secs. 44-9-1, *et seq.* The New Mexico Attorney General's Office declined to take over the action, and Plaintiffs, therefore, are proceeding to prosecute it. More specifically, Plaintiffs allege that as a result of Defendants' alleged violations of FATA, the State of New Mexico lost a total of $90 million from investments made by the Educational Retirement Board ("ERB") and the State Investment Council ("SIC"). According to the Complaint, the ERB and SIC lost this money by investing in collateralized debt obligations ("CDOs") offered by various investment firms. Plaintiffs claim that Malott, a CPA, along with the other Defendants, jointly promoted CDOs that were not backed by high-quality underlying assets and that had not been carefully analyzed and screened. According to Plaintiffs, Malott pressured the ERB and SIC to make these poor investments and when Plaintiff Frank Foy tried to speak out against the proposed investments, Malott allegedly forced Foy's early retirement. Plaintiffs also allege violations of the Unfair Trade Practices Act ("UTPA"), NMSA 1978, secs. 57-12-1, *et seq.*, based on the same allegations as set forth above.

For the following reasons, Plaintiffs' Complaint against Malott should be dismissed. First, the Complaint fails to state a claim against Malott under FATA. Second, Plaintiff Frank Foy has failed to exhaust his administrative remedies for bringing a claim under FATA. Third, the claims under FATA are not stated with particularity and fail to comply with Fed.R.Civ.P. 9(b). Fourth, Plaintiffs have failed to state a claim

2

under UTPA. Fifth, the Tort Claims Act ("TCA") precludes Plaintiffs' FATA and UTPA claims.

## II.

## Legal Standard

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation omitted). The legal sufficiency of a complaint under Rule 12(b)(6) is a question of law. *Id.*

## III.

## Legal Argument

**A. The Complaint fails to state a claim against Malott under FATA**

1978 NMSA, sec. 44-9-3(A), sets forth the specific acts prohibited by FATA. The first three prohibited acts are as follows:

1. Knowingly presenting or causing to be presented to a state employee, officer, or agent, or to a contractor, grantee, or other recipient of state funds, "a false or fraudulent claim for payment or approval."

2. Knowingly making or using a false, misleading, or fraudulent record or statement "to obtain or support the approval of or the payment on a false or fraudulent claim."

3

3. Conspiring to defraud the state "by obtaining approval or payment on a false or fraudulent claim."

Sections 44-9-3(A)(1)-(3). "Claim" is defined by Section 44-9-2(A) as "a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state."

There are no allegations in the Complaint that Malott or any Defendant presented a false claim for payment, used a false statement to obtain the approval of a fraudulent claim, or conspired to defraud the State of New Mexico by obtaining payment on a false claim. The "pay to play" scheme alleged in the Complaint does not implicate Sections 44-9-3(A)(1)-(3) of FATA. In other words, the allegations that Defendants made false and misleading statements about CDO investments, which caused the State of New Mexico to make the poor investments challenged in this lawsuit (*see* Complaint at pars. 46-60), do not equate to making false statements in connection with a request or demand for money, property or services from the State.

The fourth act prohibited by FATA is:

4. conspiring to make a false, misleading, or fraudulent record or statement "to conceal, avoid or decrease an obligation to pay or transmit money or property to the state."

Section 44-9-3(A)(4). Again, the Complaint does not allege that Malott tried to conceal, avoid, or decrease a monetary obligation owed to the State of New Mexico. Subsection (A)(4) does not encompass the alleged act of directing state money towards low quality investments for personal gain.

The fifth act prohibited by FATA is:

4

> 5. delivering less money than indicated on a certificate or receipt for that money when in possession, custody, or control of the money to be used by the state.

Section 44-9-3(A)(5). The Complaint does not allege that Malott delivered less money to the state than he had in his possession and than the amount indicated on a certificate or receipt for that money. First, there are no allegations that a certificate or receipt existed or what was recorded on any such certificate or receipt. Without such allegations, no claim can be stated under Section 44-9-3(A)(5). Second, there are no allegations that Malott was actually in possession of money or property to be used by the State; rather, Malott is alleged to have directed how State money would be used. A FATA claim under subsection (A)(5) fails for this reason as well.

The sixth act prohibited by FATA is:

> 6. delivering a receipt that falsely represents a material characteristic of property to be used by the State when a person is authorized to deliver a document certifying receipt.

Section 44-9-3(A)(6). Again, without any allegations that a receipt even exists, let alone what any such receipt described, Plaintiffs cannot bring a claim under subsection (A)(6). Moreover, it is not alleged that Malott was a person authorized to deliver a document certifying receipt of State property. Absent such allegations, the Complaint fails to state a claim under subsection (A)(6).

With regard to the seventh prohibition under FATA, *see* Section 44-9-3(A)(7), the Complaint does not allege any violation so subsection (A)(7) is not implicated in the lawsuit. *See* Complaint at pars. 3-10 (omitting any reference to subsection (A)(7)).

FATA's eighth prohibition is against:

      8. knowingly making or using a false, misleading, or fraudulent record or statement "to conceal, avoid or decrease an obligation to pay or transmit money or property to the state."

Section 44-9-3(A)(8). Plaintiffs, however, have not alleged that Malott made a false statement or record to decrease any obligation on his part (or anybody else's part) to pay the State. Malott did not have any obligation to pay the State. Rather, he was on the ERB, whose job was, in part, to direct the investment of State money. Directing investments, even if the investments were poor as alleged in the Complaint, does not equate to an obligation to pay the State. Therefore, Plaintiffs' Complaint fails to state a FATA claim under the eighth prohibition.

      FATA's final prohibition is against:

      9. a beneficiary of a claim failing to disclose a false claim to the State.

Section 44-9-3(A)(9). However, Plaintiffs do not assert in their Complaint that either Malott is the beneficiary of a false claim (a request or demand for money, property or services on his behalf) or that he failed to disclose a false claim to the State. Therefore, Plaintiff's Complaint fails to state a claim against Malott under FATA's ninth prohibition.

      Because Plaintiffs' Complaint does not contain allegations that support a cause of action under any of the nine acts prohibited by FATA, it should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief may be granted. *See, e.g., Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d at 1236.

### B. Plaintiff Frank Foy failed to exhaust administrative remedies for bringing a FATA claim

FATA specifically bars lawsuits by a present or former employee of a State agency unless that employee, during employment with the agency, exhausted existing internal procedures for reporting false claims. NMSA 1978, sec. 44-9-9(A). Plaintiff Frank Foy was an employee of a State agency. The Complaint asserts that he joined ERB in 1992, became ERB's Chief Investment Officer in 1996, and continued in that position through the events alleged in the Complaint. Complaint at par. 61. However, the Complaint is devoid of allegations that during his employment with ERB, Foy reported any alleged false claims to ERB. While Part IV of the Complaint details Foy's alleged "fight against kickbacks and illegal inducements," his purported efforts to enforce ERB's policy against political contributions by financial vendors and advisors is not the same as reporting the challenged acts to ERB through its internal procedures. In fact, there is no reference in the Complaint as to ERB's internal procedures, let alone the nature of those procedures or any attempts made by Foy to exhaust them. Absent specific allegations that Foy exhausted internal reporting procedures with regard to the allegations of false claims, Plaintiff Frank Foy's claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

Even if the ERB did not have any formal procedures for reporting the actions challenged in this lawsuit (this is not an allegation in the Complaint), Plaintiff Frank Foy still fails to allege in his Complaint that he formally reported the alleged wrongdoing to anybody outside the ERB board. FATA makes it mandatory to do so prior to filing a lawsuit in order to give the State time to act on the information reported. Section 44-9-

9(A). If the State does act on the information reported in a timely manner, than any lawsuit would be barred and Plaintiffs would be precluded from collecting any damages. *See id.* Because offering Plaintiffs a direct route to court in this case circumvents FATA's procedures and gives Plaintiffs access to tangible benefits (damages, attorney's fees, costs, and statutory damages) that are unavailable under FATA had the alleged wrongdoing been reported and acted on, Plaintiff Frank Foy's claims should be barred because he failed to exhaust his administrative remedies. *See Fitzgerald v. Barnstable Sch. Comm.,* 129 S. Ct. 788, 795 (2009).

### C. Plaintiffs have failed to state their FATA claims with particularity

Fed.R.Civ.P. 9(b) provides that the circumstances constituting fraud must be stated in a complaint with particularity. While Section 44-9-3(B) of FATA provides that proof of specific intent to defraud is not required to prove a FATA violation, this provision does not negate the particularity requirement of Fed.R.Civ.P. 9(b). In fact, Section 44-9-3(B) is perfectly consistent with Rule 9(b)'s statement that intent may be alleged generally, although the nature of the purported fraud must be stated with particularity.

Because FATA was just recently enacted in 2007, no New Mexico court has construed its provisions in light of the heightened pleading requirement of Rule 9(b). However, federal case law construing the False Claims Act, 31 U.S.C. secs. 3729, *et seq.*, the federal analogue to FATA, provides guidance as to the specificity of pleading required to assert a claim. The False Claims Act, although organized differently than FATA, shares with FATA the same purpose and contains similar language to FATA in most material respects. Federal courts have consistently held that the False Claims Act is subject to the requirements of Rule 9(b). *See, e.g., United States ex rel. Sikkenga v.*

*Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726 (10th Cir. 2006); *United States ex rel. Smith v. Boeing Co.,*, 505 F.Supp.2d 974, 981 (D. Kan. 2007). Given the absence of any law weighing against the applicability of the heightened pleading requirement of Rule 9(b) to FATA claims, this Court should adopt federal guidance with regard to the application of Rule 9(b)'s heightened pleading requirements to FATA claims.

A complaint alleging fraud must set forth the time, place and contents of the alleged false representations, the identity of the party making the alleged false statements, and the consequences thereof. *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006); *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). At a minimum, Rule 9(b) requires Plaintiffs to set forth "the who, what, when, where and how of the alleged fraud." *See United States ex rel. Smith v. Boeing Co.*, 505 F.Supp.2d 974, 981-82 (D. Kan. 1007) (internal quotation marks and citation omitted). The construction of Rule 9(b) to require precision and substantiation in fraud allegations is to "provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent conduct." *In re Burlington Coat Factory Sec. Litigation,* 114 F.3d 1410, 1418 (3rd Cir. 1997).

In *Koch*, the following allegations were made pertaining to the fraud claim in that case:

> during 1982 and continuing to the present time, defendants planned and acted to conceal the true value of shares of stock in Koch Industries from plaintiffs and the other selling shareholders and carried out a scheme designed to understate the existence, extent and value of property and assets owned directly or beneficially by Koch Industries by failing to disclose the existence, location, ownership, condition and true value of assets and property, including, but not limited to, oil and gas reserves, acreage, prospects and properties, oil and gas production and planned development of oil and gas properties owned or acquired prior to June 10, 1983.

203 F.3d at 1236.  The Tenth Circuit, affirming the district court's dismissal of the fraud claim, concluded that the broad allegations quoted above set forth none of the specific and required allegations regarding time, place, and content of the alleged fraud.  *Id.* at 1237.  For example, the statement that the alleged misrepresentations were made "during 1982 and continuing to the present time" did not alert the defendants to a sufficiently precise time frame to satisfy Rule 9(b), according to the Tenth Circuit.  *Id.*  Furthermore, the Tenth Circuit noted that there was no mention at all the place at which any misrepresentations were made.  *Id.*  In addition, the Tenth Circuit concluded that the allegations specified nothing about the specific content of the alleged misrepresentations, instead reciting a general statement that the defendants "failed to disclose the existence, location, ownership, condition and true value of assets and property."  *Id.*  Finally, the Tenth Circuit found that the broad allegations of fraud failed to identify any specific defendant who made these alleged fraudulent misrepresentations or omissions, a particularly important requirement in the case because of the number of individual defendants involved.

      This case is very similar to the situation presented in *Koch.*  Both cases involved allegations of investment fraud.  In this case, like in *Koch*, Plaintiffs failed to set forth the specific time frame of the alleged fraud.  Likewise, there was no allegation in *Koch,* and there is no mention in Plaintiffs' Complaint in this case of where—the location at which—the alleged fraud took place.  Similarly, in both cases, the specific content of the alleged fraudulent allegations was omitted.  Finally, while Plaintiffs in this case make many general allegations of fraud, they never specify which individual Defendant made any particular statement, which, as the Tenth Circuit in *Koch* pointed out, was

particularly important because of the large number of defendants sued. In this case Plaintiffs have sued 87 parties.

Although it is impossible to address all of Plaintiffs' claims of fraud in this brief, a few examples are illustrative of the lack of specificity, which is fatal to Plaintiffs' claims under well-established law. Paragraph 46 of Plaintiffs' Complaint sets forth 48 alleged instances of false statements. Did Malott make any of them? It is impossible to discern from Plaintiffs' Complaint. Where and when were the alleged false statements made? Again, Plaintiffs' Complaint lacks this particularity. The requirement that Plaintiffs set forth who made the alleged fraudulent statements and where and when such alleged fraudulent statements were made is not only mandatory under the law, but it is also critical for Malott to be able to defend against such claims, by being able to prove, for example, that he was not present when and where the alleged fraudulent statements were made, or that he was not the person who made them.

Paragraph 49 of the Complaint states that Defendants jointly acted to conceal their claims about the investment products they promoted. What did Malott specifically do in this regard? What investment products did he specifically promote? What claims did he make about those products? Again, aside from not meeting the requirements of Fed.R.Civ.P. 9(b), it is impossible for Malott to defend against such a vague allegation. If Plaintiffs were able to detail which investment products Malott allegedly promoted and what he said about those specific investment products, in addition to being able to defend against a fraud claim on the basis that he never made the representations claimed, Malott would also be able to assert that any representations he made were truthful. Likewise, it is impossible to defend against Plaintiffs' claim in paragraph 56 of the Complaint that

11

Defendants misrepresented the amounts of leverage in certain investments without knowing the actual amount of leverage and the amount of leverage claimed.

Again, these examples are illustrative of the lack of specificity in all the claims of fraud Plaintiffs make in their Complaint. The lengthy nature of the Complaint and the numerous allegations in it do not, by themselves, satisfy Rule 9(b)'s requirements. The Complaint is not even marginally specific as to the specific basis of the FATA claims against Malott. Rather, read as a whole, the Complaint alleges a "pay to play" scheme whereby unspecified Defendants misrepresented the value of CDOs sold to the State of New Mexico and alleges that the State would not have invested in the CDOs absent the alleged misrepresentations. This is exactly the type of broad allegations that the *Koch* court found insufficient to state a claim for fraud. Therefore, Plaintiffs' fraud claims brought pursuant to FATA should be dismissed.

### D. Plaintiffs have failed to state a claim for violations of the UTPA

The UTPA prohibits "[u]nfair or deceptive trade practices … in the conduct of any trade or commerce." 1978 NMSA, sec. 57-12-3. An unfair or deceptive trade practice is defined as: "Any false or misleading oral or written statement … or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods and services or in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce." Section 57-12-2(D). Based on the foregoing statutory language, the UTPA only contemplates claims by "a plaintiff who seeks or acquires goods and services and a defendant who provides goods and services." *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot*, 2005 NMCA 051, par. 14, 137 N.M. 524, 113 P.3d 247.

In this case, Plaintiffs are not alleging they were seeking to acquire goods or services from Malott. Moreover, Plaintiffs are not alleging Malott provided any goods or services. Finally, Malott was not engaged in trade or commerce with regard to the allegations in the Complaint. Accordingly, Plaintiffs' UTPA claim fails. *See also Saylor v. Valles,* 2003 NMCA 037, pars. 12-13, 133 N.M. 432, 63 P.3d 1152 (affirming dismissal of UTPA claim when the defendants did not sell, lease, rent, or loan goods or services and were not engaged in trade or commerce).

Directing investments, which is what is alleged in this lawsuit, even if for personal gain, is not the type of transaction the New Mexico Legislature intended to cover when it enacted the UTPA. *See, e.g., Stevenson v. Louis Dreyfus Corp.,* 112 N.M. 97, 100, 811 P.2d 1308, 1311 (N.M. 1991) (UTPA mainly governs misleading trade identification or false and deceptive advertising); *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005 NMCA 51, 137 N.M. 524, 113 P.3d 347, 353 (UTPA's purpose is to serve as consumer protection legislation, and UPA therefore gives standing only to buyers of goods or services). Investment activities does not entail the acquisition of goods or services. *Nanodetex Corp. v. Sandia Corp.,* 2007 U.S. Dist. LEXIS 85959, *18-19 (D. N.M.).

Even if investment activities were covered by the UTPA, Plaintiffs' UTPA claim still fails. Plaintiffs do not allege Malott provided the CDO investments that the ERB purchased; rather, Plaintiffs allege that Malott exerted pressure on the ERB to purchase the CDOs. Therefore, the "buyer" of investments would have been the ERB and the "seller" would have been the entities sued such as Vanderbilt Capital Advisors, LLC, or UBS Securities LLC. Likewise, Plaintiffs would not have been either a buyer or seller of investments or investment advice. Therefore, they have no standing to sue anybody or

13

any entity, and particularly not Malott, under the UTPA. *See Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005 NMCA 51, 137 N.M. 524, 113 P.3d 347, 353.

Because investment activities are not even covered by the UTPA, and because Plaintiffs were not the buyers or sellers of investments or investment advice, they have no standing to sue Malott, who likewise, was not a buyer or seller of investments or investment advice. Therefore, Plaintiffs' UTPA cause of action fails to state a claim upon which relief may be granted and should be dismissed.

Plaintiffs' UTPA claims also fail because they do not have standing to assert an UTPA claim on behalf of the taxpayers of the State of New Mexico. Plaintiffs brought this lawsuit, *qui tam,* on behalf of New Mexico's taxpayers. FATA grants Plaintiffs the right to do so. *See* Section 44-9-5. The UTPA, however, does not grant Plaintiffs the right to bring an action on behalf of others. To the contrary, the UPTA grants a private right of action to someone harmed by an unfair trade practice. There is no law, statute, or regulation to suggest the UTPA may be used to protect the State or to regulate governmental fraud. Accordingly, Plaintiffs' UTPA claims should be dismissed for this reason as well.

### E. The Tort Claims Act precludes Plaintiffs' claims

Liability of public employees acting within their scope of duty is governed by the TCA, NMSA 1978, secs. 41-4-1, *et seq.* The TCA defines the scope of liability for government entities and their employees by: (1) retaining immunity for torts not specifically waived by the TCA, *see* Section 41-4-2(A); and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty, *see* Section 41-4-4.

"[P]ublic employee" means an officer, employee or servant of a governmental entity, including "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." Section 41-4-3(F)(3). Although Plaintiffs' Complaint does not expressly state whether Malott was a public or private actor, an examination of the Complaint clarifies that Malott falls within the definition of "public employee" under the TCA. He was on the ERB board. *See* Complaint at pars. 70-72. In addition, Plaintiffs allege Malott was working on behalf of or in the service of David Contarino, Chief of Staff (formerly identified as John Doe # 2). *See* Complaint at par. 63 (Malott pressured ERB to make certain investments in accordance with Contarino's instructions); Complaint at par. 66 (Malott relayed threats to Plaintiff Frank Foy from Contarino).

The TCA grants all government entities and their employees general immunity from actions in tort, and waives that immunity only in certain specified circumstances. See § 41-4-4. The areas for which immunity is waived under the TCA are quite specific. *See, e.g.*, secs. 41-4-6 (waiver of immunity for negligence in the operation or maintenance of buildings, public parks, machines, or equipment), 41-4-7 (operation of airports), 41-4-8 (public utilities exception), 41-4-9 (medical facilities), 41-4-10 (health care providers), 41-4-11 (highways and streets), 41-4-12 (police officers). Sections 41-4-4 through 41-4-12 provide a complete list of exceptions to an otherwise blanket sovereign immunity. *Luboyeski v. Kermit Hill*, 117 N.M. 380, 383, 872 P.2d 353, 356 (1994).

While the TCA does not foreclose the possibility that a separate statutory act may waive immunity for acts not enumerated in Sections 41-4-4 through 41-4-12, any waiver contained in another statutory scheme must be explicit. For example, in *Luboyeski*, the New Mexico Supreme Court held that the New Mexico Human Rights Act specifically

waived immunity by providing for an award of damages against "'the state and [any] of its political subdivisions'" that violate the provisions of the Human Rights Act. *Id.* at 384 (internal citation omitted). However, there is no similar language in the UTPA. *See* Section 57-12-10 (outlining private remedies for violations of the Act). Therefore, Plaintiffs' UTPA claims are barred by the TCA.

Plaintiffs' FATA claims are also barred. Section 44-9-3(C) sets forth the penalties recoverable against "[a] person who violates" the Act. Section 44-9-2(D)'s definition of "person" does not include the state or any of its political subdivisions. In fact, not only is "state" separately defined in Section 44-9-2(E), but both FATA and the Complaint in this case contemplate that the State of New Mexico is the wronged party, and that any damages recovered will be on behalf of the State, not that the State will be liable for damages. Because FATA does not waive immunity for state employees who violate the Act, Plaintiffs' FATA claims against Malott, who falls under the definition of a state employee, are barred.

## IV.

## Conclusion

Plaintiffs' Complaint against Malott should be dismissed for the following reasons:

1. Plaintiffs' FATA claims against Malott fail to state a claim upon which relief may be granted;

2. Plaintiff Frank Foy's FATA claims are barred because he failed to exhaust his internal, administrative remedies prior to filing suit;

3. Plaintiffs have failed to state their FATA claims, which are based on fraud, with specificity, and, therefore, have not complied with Fed.R.Civ.P. 9(b);

16

4. Plaintiffs have failed to state any claims against Malott under the UTPA upon which relief may be granted; and

5. The TCA bars Plaintiffs' FATA and UTPA claims because immunity for those claims has not been waived by the TCA, FATA, or UTPA.

WHEREFORE, Defendant Bruce Malott respectfully requests this Court to dismiss the claims against him, for his fees and costs in defending this action pursuant to FATA and the UTPA, and for such further relief as the Court deems appropriate.

> Respectfully submitted,
>
> NARVAEZ LAW FIRM, P.A.
>
> By   */s/ Martin R. Esquivel*
>     HENRY F. NARVAEZ
>     MARTIN R. ESQUIVEL
>     BRYAN C. GARCIA
>     *Attorneys for Defendant Bruce Malott*
>     PO Box 25967
>     Albuquerque, NM  87125-0967
>     Telephone:   (505) 248-0500
>     Facsimile:    (505) 247-1344

We hereby certify that a true and accurate copy of the foregoing *Entry of Appearance* was submitted electronically to the CM/ECF system for electronic delivery, unless otherwise noted, on March 2, 2009 to:

Victor R. Marshall
Victor R. Marshall & Associates, P.C.
12509 Oakland NE
Albuquerque, NM 87122

Sam Bregman
Eric Loman
Bregman Law Firm PC
111 Lomas Blvd. NW #230
Albuquerque, NM  87102-2369

Andrew G. Schultz
Rodey, Dickason, Sloan, Akin & Robb
P.O. Box 1888
Albuquerque, NM  87103
Facsimile (505) 982-0307

Peter L. Simmons
Samuel P. Groner
David Wei
Fried, Frank, Harris, Shiver & Jacobson, LLP
One New York Plaza
New York, NY 10004-1980

John T. Boese
Douglas W. Baruch
Karen M. Soares
Fried, Frank, Harris, Shiver
& Jacobson, LLP
1001 Pennsylvania Ave., NW, Ste. 800
Washington, D.C. 20004

William C. Madison
Madison Harbour & Mroz, P.A.
201 Third Street NW, Suite 1600
Albuquerque, NM 87102

Holly Stein Sollod
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202-3979

Eric T. Gortner
Emily Nicklin
Kirkland & Ellis, LLP
200 E. Randolph Street 74th Floor
Chicago, IL 60601-6636

Stephen M. Simone
Kathleen M. Mixon
Meena H. Allen
Simone, Roberts & Weiss, P.A.
11200 Lomas Blvd. NE, Suite 210
Albuquerque, NM 87112

Phillip A. Geraci
Daniel R. Alonso
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022-3598

John M. Conlon
Mayer Brown, LLP
1675 Broadway
New York, NY 10019-5820

Kristina E. Martinez
Mark F. Sheridan
Holland & Hart, LLP
P.O. Box 2208
Santa Fe, NM 87504-2208

Spencer Reid
David W. Peterson
Keleher & McLeod
P.O. Box AA
Albuquerque, NM 87103

Richard A. Rosen
Maria T. Vullo
Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
1285 Avenue of the Americas
New York, NY  10019-6064

Douglas A. Baker
Paul M. Fish
Modrall, Sperling, Roehl,Harris & Sisk,P.A.
P.O. Box 2168
Albuquerque, NM 87103-2168

Lauren Keefe
Charles R. Peifer
Peifer, Hanson & Mullins, P.A.
P.O. Box 25245
Albuquerque, NM 87125

Faith Kalman Reyes
Simons & Slattery, LLP
P.O. Box 5333
Santa Fe, NM 87502-5333

Michael W. Brennan
Brennan & Sullivan, P.A.
128 E. DeVargas
Santa Fe, NM 87501

Thomas M. Hnasko
Kelcey C. Nichols
Hinkle, Hensley, Shanor & Martin, LLP
P.O. Box 2068
Santa Fe, New Mexico 87504-2068

Kent E. Kemeny
Maria T. Vullo
Michael Klunder
Paul, Weiss Rifkind, Wharton
& Garrison, LLP
2001 K Street, NW
Washington, DC 20006-1047

**VIA EMAIL**
Gary King
Nan E. Erdman
J. Torres
New Mexico Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

**VIA EMAIL**
Peter A. Silverman
Joseph A. Donado
Figliulo & Silverman, P.C.
10 S. LaSalle Street
Chicago, IL 60603

**VIA EMAIL**
Mel Yost
Scheuer, Yost & Patterson, PC
P.O. Box 9570
Santa Fe, NM 87504-9570

David F. Cunningham
Thompson, Hickey, Cunningham
Clow & April, P.A.
460 St. Michael's Drive
Bldg 1100, Suite 1103
Santa Fe, NM 87501

**VIA EMAIL**
Walter J. Melendres
Stephen S. Hamilton
Alexandra Corwin Aguilar
Montgomery & Andrews, P.A.
P.O. Box 2307
Santa Fe, NM 87504-2307

**VIA EMAIL**
William B. Dawson
Carol C. Payne
Vinson & Elkins, LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975

**VIA EMAIL**
Duane R. Lyons
Quinn Emanuel Urquhart Oliver & Hedges
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

**VIA EMAIL**
R. Hackney Wiegmann
David M. Zinn
Williams & Connolly, LLP
725 12th Street, NW
Washington, D.C. 20005

           */s/ Martin R. Esquivel*           
HENRY F. NARVAEZ
MARTIN R. ESQUIVEL
BRYAN C. GARICA