IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.* FRANK C. FOY
AND SUZANNE B. FOY,

     *Qui tam* Plaintiffs,

vs.                      No. CV-09-178 RB/DJS

VANDERBILT CAPITAL ADVISORS, LLC, *et al.*,

     Defendants.

**VANDERBILT DEFENDANTS AND PATRICK LIVNEY'S MOTION
TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

### INTRODUCTION

     Seeking to capitalize on two well-publicized but completely unrelated events – the collapse of the market for collateralized debt obligations in the wake of the national economic recession, and the federal "pay to play" investigation regarding the administration of Gov. Bill Richardson – plaintiff Frank Foy has manufactured a claim that CDO investment losses suffered by two New Mexico state entities are supposedly the result of fraud and political corruption rather than market forces.  But his failure to specify the supposed fraud, his inability to squeeze the claims under the statutes he seeks to invoke, and the illogic of his theory all tellingly reveal the extent to which he is stretching to invent wrongdoing where none exists.

     The New Mexico State Investment Council ("SIC") and Educational Retirement Board ("ERB") invested an aggregate of $90 million to buy shares of Vanderbilt Financial Trust (now Vanderbilt Financial, LLC) ["VF"], a vehicle that invested in "CDO-related products." (Compl. ¶¶ 2, 46).  Foy's lawsuit is brought under a state *qui tam* statute, the New Mexico Fraud Against Taxpayers Act ("FATA"), NMSA 1978, §§ 44-9-1 through -14, which allows a private citizen to sue in a representative capacity on the state's behalf in certain instances involving alleged

fraudulent claims against the state. But the complaint, while filled with accusatory sound bites, is a legally incoherent jumble of allegations that do not come close to stating a viable claim.

**No jurisdiction.** The complaint fails to meet even the most basic threshold requirements of FATA. Indeed, the complaint's allegations show that the Court has no subject matter jurisdiction over this action and that the claims are barred because (a) Foy was a state employee who failed to exhaust internal procedures for reporting such allegations, and (b) Foy has sued at least two state officials as defendants. Moreover, the complaint never identifies a single false claim for payment, a predicate allegation under FATA.

**No specificity.** In violation of black letter rules of pleading, the complaint does not even try to specify what false statements were made, by whom, or how those statements were supposedly false. Nor does it make any effort to identify which of the 38 defendants supposedly did what. Instead, it lumps all defendants together, labels everything a "conspiracy," and leaves it to the defendants to try to sort out who among them supposedly did what wrong. This type of pleading is woefully inadequate, and is particularly insufficient in a case alleging fraud.

**Disregard of written disclosures.** The claimed misstatements or omissions (to the extent they can even be discerned) are inconsistent with the detailed risk disclosures made in the VF offering memorandum. The law is clear that a fraud claim cannot be predicated on ignoring express written disclosures; nor can such a claim survive in the face of such warnings.

**Inconsistent and illogical.** Foy's claims also are internally inconsistent and impossible to square with any theory of reliance or loss causation. He alleges that contributions were made to Gov. Richardson's presidential campaign in February 2007 (Compl. ¶ 74), but does not explain how those contributions caused SIC and ERB to make their decision to invest in VF nine months *earlier*, in May 2006 (*Id.* ¶ 69). He also claims that "but for" the political contributions,

the investments would not have been made (*Id.* ¶ 81). If that is true, then the allegedly false statements are irrelevant because under Foy's own theory, it was the contributions rather than the statements that caused the investment to be made, and FATA does not even apply.

**No standing.** Foy has no standing even to assert a claim under the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 §§ 57-12-1 through 26. That statute does not permit claims to be brought by a private citizen on behalf of state entities. Nor does his claim even fall within the statute's ambit: claims relating to the sale of investment securities simply are not covered.

In view of all these deficiencies, the Vanderbilt defendants[1] and Patrick A. Livney move to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 9(b).

ARGUMENT

## I.   THE COURT LACKS JURISDICTION OVER THE FATA CLAIM

Under the express language of FATA, the Court lacks jurisdiction and must dismiss the complaint for two independent reasons: Foy's failure to exhaust administrative remedies, and his decision to sue state officials, both of which are statutorily prohibited. Foy's purported standing to pursue this claim is derived from Section 5 of the Act, NMSA 1978, § 44-9-5.[2] However, Section 9 of the Act, *id.* § 44-9-9, specifically limits the ability of *qui tam* plaintiffs to proceed, and mandates that "no court shall have jurisdiction over an action brought pursuant to Section 5" in the precise circumstances of this case.

---

[1]     The Vanderbilt defendants are Vanderbilt Capital Advisors, LLC, Vanderbilt Financial, LLC, Vanderbilt Financial Trust (now dissolved), Osbert M. Hood, Ron D. Kessinger, Robert P. Nault, James. R. Stern, Stephen C. Bernhardt; Kurt W. Florian, Jr., Anthony J. Koenig, Jr., Mark E. Bradley and Pioneer Investment Management USA Inc.

[2]     FATA is effective as of July 1, 2007, but purports to be retroactive for 20 years. NMSA 1978, § 44-9-12.A. The investment challenged here was made in early 2006 (Compl. ¶ 69), and Foy does not allege any improper acts by the Vanderbilt defendants or Livney after July 1, 2007. The Vanderbilt defendants and Livney reserve all rights to challenge the constitutionality of any attempt to apply FATA retroactively in this case.

### A.     Foy Failed To Exhaust Internal ERB Remedies

Section 9 expressly requires a state employee to exhaust internal procedures before bringing a FATA claim. Foy was an ERB employee from 1992-2008, with responsibility for overseeing ERB's investments. (Compl. ¶¶ 61, 62, 78). Thus, Foy was required to pursue matters administratively before running to court. Section 9(A) of FATA provides:

> **No court shall have jurisdiction over an action** brought pursuant to Section 5 of the Fraud Against Taxpayers Act by a present or former employee of the state unless the employee, during employment with the state and in good faith, **exhausted existing internal procedures for reporting false claims and the state failed to act** on the information provided within a reasonable period of time.

NMSA 1978, § 44-9-9(A) (emphases added). This provision is jurisdictional and is designed to prevent the very situation Foy creates here. When a state employee such as Foy becomes aware of alleged fraud against the state, his primary duty as a state official is not to enrich himself or his family but to report it so that the state can investigate and take any appropriate action.

The complaint contains no allegations that Foy made any effort to utilize internal procedures to report the so-called fraud he alleges was committed by the Vanderbilt defendants, or that the state refused to act on that report. To the contrary, the most Foy alleges is that he "vigorously resisted" the VF investment before the ERB board voted to proceed with it (Compl. ¶¶ 69-70), and then said nothing more. Further, he claims to have resisted it not because it was false or fraudulent – which is what is required under the Act – but merely because it "was not a good investment, and it did not fit in ERB's portfolio." (*Id.* ¶ 69). Section 9 prohibits this type of "keep quiet and sue later" approach.

Statutory provisions such as FATA's exhaustion provision are prerequisites for subject matter jurisdiction. While there are no reported decisions interpreting or applying FATA, it is evident by comparison that FATA is patterned after the federal civil False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), and the Supreme Court has held that identical language in the FCA –

"no court shall have jurisdiction over an action" – represents "a clear and explicit *withdrawal* of jurisdiction" under the conditions specified. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-68 (2007). Because Section 9(A) of FATA mandates a similar withdrawal of jurisdiction to that at issue in *Rockwell*, there is no subject matter jurisdiction over this "action" unless Foy exhausted internal procedures *and* the state failed to act in a reasonable amount of time.

It is Foy's burden to establish that the Court has jurisdiction, and where jurisdictional prerequisites exist, the plaintiff must specifically plead the jurisdictional elements in his complaint. *See, e.g., In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (failure to plead jurisdictional requirements compelled dismissal); *see also Whitfield v. Clippinger*, 2009 WL 102669, at *4 (D. Kan. Jan. 7, 2009) (same); *Richardson v. Fowler Envelope Co., LLC*, 288 F. Supp. 2d 1215 (D. Kan. 2003) (same). Foy has not done so.

The inclusion of Foy's wife, Suzanne Foy, as an additional *qui tam* plaintiff does nothing to cure this jurisdictional defect: Section 9(A) expressly bars the Court from exercising jurisdiction over "an action" brought by "a present or former employee of the state." Foy himself is that state employee (Compl. ¶¶ 62-78) regardless of whether Mrs. Foy also is a party. As such, this is "an action" by a state employee, and "[n]o court shall have jurisdiction over" it. There is no exception in the statute for "actions" brought by state employees *and* their spouses.[3]

**B.**   **The Court Also Lacks Jurisdiction Because The Complaint Names State Officials As Defendants**

The Court also lacks jurisdiction over the FATA claim due to the entirely separate jurisdictional bar imposed by Section 9(B) of the Act. Among the numerous defendants named are two state officials: Gary Bland, the State Investment Officer, and Bruce Malott, the ERB

---

[3]   The complaint does not contain a single allegation about Mrs. Foy's knowledge, involvement or role. The jurisdictional requirements of the statute would be toothless if they could be circumvented just by adding one's spouse as a plaintiff.

Chairman.   )Compl. ¶¶ 33, 71).[4]   Section 9(B) of the Act expressly deprives the Court of jurisdiction over the entire action when a *qui tam* plaintiff seeks to sue "an elected or appointed state official … if the action is based on evidence or information known to the state agency to which the false claim was made …."  NMSA 1978 § 49-9-9(B).

Foy's complaint not only asserts that these state officials conspired with all the other defendants (Compl. ¶¶ 5, 43, 45), but expressly alleges that the action pertains to alleged statements made to the ERB and SIC, on which Bland and Malott served.  (*E.g.*, *id.* ¶¶ 50-53, 59).  Since the complaint alleges that Bland and Malott participated in the activities at issue, the alleged misconduct was necessarily "known" to those agencies.  On the face of the complaint, the FATA claim is barred by Section 9(B) and must be dismissed for lack of jurisdiction.

## II.    THE COMPLAINT MUST BE DISMISSED UNDER RULE 9(b)

Wholly apart from its statutory deficiencies, the complaint must also be dismissed under Fed. R. Civ. P. 9(b).  For all of its high-volume rhetoric and tone of indignation, the complaint is remarkably short on detail and utterly fails to comply with the Rule 9(b)'s particularity requirements.  Indeed, the complaint:

- fails to specify the "who, what, when or why" of *any* of the allegations;

- fails to specify the alleged wrongdoing of the individual Vanderbilt defendants, Livney or their alleged co-conspirators;

- fails to identify which specific employees of the corporate defendants engaged in the alleged wrongdoing; and

- fails to identify a single false claim for payment made to the state.

---

[4]    It is a matter of public record that Bland and Malott hold these positions and that they are gubernatorial appointments.  *See* NMSA 1978, §§ 6-8-4 & 22-11-3(B)(6); http://www.nmlegis.gov/lcs/minutes/ipocminnov6.06.pdf (minutes of state legislature's Investment and Pensions Oversight Committee meeting of Nov. 6, 2006 identifying Bland and Malott as gubernatorial appointees to the SIC and ERB).  The Court can take judicial notice of these undisputed public record facts in connection with this motion.  *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

These omissions are particularly egregious given that Foy claims to have been present when the alleged false statements were made and claims to have first hand knowledge of the facts alleged. (*E.g.,* Compl. ¶ 61). *See, e.g., United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (plaintiff worked at defendant company and was knowledgeable about the alleged falsification; he "ha[d] no legitimate excuse for filing a vague complaint that d[id] not assert particular details to support its allegations of fraud").

A.    **Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a court must dismiss a plaintiff's claim if it appears from the pleadings that the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). While the Court should accept as true all well-pleaded factual allegations in the plaintiff's complaint, it may not accept "conclusory allegations without supporting factual averments." *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001); *see also Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

As the Supreme Court emphasized in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level." *Accord United States ex rel. Conner v. Salina Reg'l Health Ctr.*, 543 F.3d 1211, 1216 (10th Cir. 2008) (dismissal appropriate when complaint "lacks enough facts to state a claim for relief that is plausible on its face"). Under Fed. R. Civ. P. 12(b)(6), a failure to comply with the heightened pleading standards established by Rule 9(b) is grounds for dismissal. *See, e.g., Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir. 1997).

7

**B.    Rule 9(b)'s Heightened Pleading Standards Apply To The Complaint**

Under Rule 9(b), the circumstances constituting the alleged fraud must be stated with particularity.  FATA sounds in fraud – after all, its title is the ***Fraud*** Against Taxpayers Act and it repeatedly references "fraudulent claim[s]" and "fraudulent records[s]."  NMSA 1978, §§ 44-9-3(A)(1) to (4), (8).  Further, FATA is modeled on the federal False Claims Act, and complaints alleging FCA violations are fraud claims subject to the stringent pleading standards of Rule 9(b).  *See, e.g., United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 2000 WL 1595976, at *3 (10th Cir. Oct. 26, 2000) (unpublished); *see also United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008); *United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d 552 (8th Cir. 2006); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 227 (1st Cir. 2004); *United States ex rel. Ward v. City of Denver*, 2007 WL 2986325, at *1 (D. Colo. Oct. 9, 2007).  Foy, therefore, is required to comply with this rule.

**C.    The Complaint Fails to Identify Any Particulars of the Alleged Fraud**

Foy's complaint does not even come close to meeting Rule 9(b)'s particularity requirements.  In false claims cases like this one, courts have held that complaints must set forth "at a minimum … the 'who, what, when, where and how of the alleged fraud."  *Schwartz*, 2000 WL 1595976 at *3.  *Accord Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) ("a complaint alleging fraud must set forth the time, place, and contents of the false representation, the identity of the person making the false statements and the consequences thereof').  *See also Sikkenga*, 472 F.3d at 728 n. 34 ("generalized daisy chain of causation" does not meet requirements of 9(b)).  This complaint does nothing of the sort.

Foy fails to specify (1) the time and place of any of the purportedly fraudulent claims, (2) the specific statement or omission alleged to be false, (3) the exact nature of the fraud, (4) which of the many defendants allegedly made which false claims, and (5) with respect to the corporate

defendants, which representatives of each institution allegedly committed the wrongful acts. For instance, most of the Vanderbilt defendants – as with many of the other defendants – are mentioned only in Section II of the complaint, which merely identifies the "Parties." The complaint never specifies the role, if any, each defendant played in the alleged fraud.

### 1.    The Alleged False Statements Are Not Specified

Foy's one effort (*see* Compl. ¶ 46) to enumerate supposedly false statements falls far short of the mark. Foy summarily asserts that the false statements by "the defendants" include:

1.    That the investment would have a high level of risk adjusted earnings;

8.    That the defendants had the expertise and proprietary methods to understand and control and minimize the risks of the investment;

11.   That Vanderbilt had special computer programs and expertise to spot problem mortgages before they became a problem;

14.   That the investment would use only high quality CDO managers;

22.   That the information about the investment had been obtained from independent sources; and

23.   That the expectations and projections for the investment were based on reasonable assumptions.

Yet, the complaint never specifies the particulars (time, place, or speaker) of any of these statements. Further compounding the deficiency, Foy summarily asserts that "[t]hese claims, statements, and representations were false and misleading." (Compl. ¶47). That is not enough. "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *United States v. Cheng*, 184 F.R.D. 399, 402 (D.N.M. 1998), citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997). Foy neither specifies why these statements were fraudulent nor alleges facts that would demonstrate that the statements were in any way untrue.

### 2.    The Complaint Fails To Specify The Conduct Of Each Defendant

The complaint seeks to hold each defendant "jointly and severally liable" for the alleged FATA violations.  However, the complaint never specifies the wrongdoing of each defendant that would, if proven, establish such individual liability.  Time and again, it instead combines the 38 defendants into an undifferentiated mass without specifying each defendant's purported role in the alleged fraud and without tying each defendant specifically to any wrongful act.

When there are fraud allegations against multiple defendants, Rule 9(b) requires the complaint to differentiate among the defendants, and the complaint must satisfy the rule as to each defendant separately.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  Failing to distinguish among multiple defendants and simply attributing wrongdoing to "the defendants" collectively violates Rule 9(b).  *See, e.g., Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (plaintiff "must … identify which [defendant] was responsible for the individual acts of fraud"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of FCA complaint that "lump[ed] all the defendants together and [did] not specify who was involved in what activity"); *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001) (pleading must "allege as to *each individual defendant* the 'nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants"); *Hoover v. Langston Equip. Assoc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("general averments of fraud attributed to 'the defendants'" did not satisfy Rule 9(b)).[5]

---

[5]    Foy's conclusory allegation that the defendants are liable for conspiring to violate FATA does not remedy the pleading deficiency.  *Monus v. Colorado Baseball 1993, Inc.*, 103 F.3d 145 (table), 1996 WL 723338, at *6 (10th Cir. Dec. 17, 1996) (affirming dismissal; "[t]he word 'conspiracy' does not alone satisfy the specificity requirement of Rule 9(b)").

3.    **For The Entity Defendants, The Complaint Fails To Specify The Role Of Individual Employees In The Alleged Fraud**

In addition to failing to distinguish among the alleged misconduct of the named defendants, the complaint is deficient because it fails to identify the specific representatives of the entity defendants who purportedly engaged in such conduct.[6] Where corporate entities are named as defendants, Rule 9(b) requires that the plaintiff identify the individual employees who participated in the alleged wrongdoing. *See, e.g., United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004); *see also Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 446 (6th Cir. 2008) (FCA complaint failed to comply with Rule 9(b) because "[*qui tam* plaintiff] has not … identified any of the … employees who were allegedly pressuring the medical employees to falsify medical records"); *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001) (FCA claim failed to satisfy 9(b) where *qui tam* plaintiff failed to identify employees involved in the fraud); *United States ex rel.*; *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993) ("[T]he identity and/or role of the individual employee involved in the alleged fraud must be specified in the complaint."). Foy's complaint must be dismissed for this reason, as well.

D.    **The Complaint Fails To Identify Any False Claim For Payment**

On top of these failings, Foy never identifies a single false claim for payment, as the statute requires. NMSA 1978, § 44-9-3. Under the analogous False Claims Act, in order to comply with Rule 9(b), a *qui tam* plaintiff "must proffer 'details that identify particular false claims for payment that were submitted to the government.'" *United States ex rel. Sikkenga v.*

---

6    The only individual as to whom any acts are mentioned is Patrick Livney of Vanderbilt. All that is said about him is that he (a) made a telephone call to Frank Foy, without specifying any supposedly false statement made in that call, (Compl. ¶ 69), and (b) made a publicly disclosed campaign contribution many months after the SIC and ERB purchased their VF shares (*id.* ¶ 74), without any explanation of how that contribution allegedly was fraudulent or in any way illegal.

*Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004)). In words equally applicable to FATA, the Tenth Circuit declared:

> Liability under the FCA requires a false claim – a defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case. Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the circumstances constituting fraud and mistake that must be pled with particularity under Rule 9(b). However, unless such pleadings are linked to allegations, stated with particularity, of the actual false claims submitted to the government, they do not meet the particularity requirements of Rule 9(b).

*Sikkenga*, 472 F.3d at 727. *See also United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *'claim for payment.'*'").

Here, Foy never identifies any false claim for payment. Instead, the complaint merely recites several provisions of FATA and summarily asserts that defendants violated those provisions. (*See, e.g.,* Compl. ¶¶ 3-10). Foy lists a series of allegedly "false and misleading or fraudulent statements" that the "defendants" – he does not say which – allegedly made in an effort to promote the VF investment, (*id.* ¶¶ 46-47), plus allegedly improper political contributions made in an effort to procure the investment. (*See, e.g., id.* ¶¶ 65, 71, 74). But generic claims that there was a fraudulent scheme do not suffice and are no substitute for pleading with particularity the essential false claims for payment. *See, e.g., United States ex rel. Fent v. L-R Commc'ns Aero Tech LLC*, 2007 WL 3283689, at *4 (N.D. Okla. Nov. 2, 2007) (even if plaintiff "stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint fails to meet the minimum pleading requirements for the *actual presentment* of *any* false *claims*" and dismissing complaint pursuant to 12(b)(6)).

Because a claim for payment is the *sine qua non* of any false claims act action and the complaint fails to identify *even one* such claim, the complaint must be dismissed.

### III.    THE COMPLAINT'S INTERNALLY CONTRADICTORY ACCUSATIONS DEFEAT CLAIMS OF RELIANCE OR LOSS CAUSATION

Apart from its lack of specificity, the very allegations of Foy's complaint compel its dismissal.  In particular, Foy's cornerstone allegation of political corruption – that "but for these illegal inducements [of campaign contributions], the investment in Vanderbilt would not have been made" (Compl. ¶ 81) – is actually fatal to his claim.  If, as he says, the investment was caused by campaign contributions, then it was *not* caused by any alleged false statement about the nature or structure of the VF product.  In that event, there could not have been any reliance on any misstatements, or any losses from any misstatements, since politics, rather than misstatements, drove the investment.  Without reliance or loss causation, there was no fraud, and without fraud, there is no FATA claim.  *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) (affirming dismissal of complaint because "if a plaintiff plead[s] particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court").

It does not matter that Foy also alleges reliance on claimed misstatements (Compl. ¶ 58). His allegations are internally contradictory and therefore self-defeating – if the investments would not have been made but for the allegedly illegal inducements, as Foy alleges, then the supposedly "false claims, statements, and representations" were not the legal cause of the SIC or ERB investments.  *See, e.g.*, *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 164 P.3d 90 (plaintiff must have "suffered damages that were proximately caused by justifiable reliance on [defendant]'s misrepresentation").

When a plaintiff's allegations are internally contradictory, dismissal of the complaint is appropriate because "[plaintiff]'s own pleading tends to defeat his claim."  *See Friedman v.*

*Kennard*, 248 Fed. Appx. 918, 921 (10th Cir. 2007), citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *see also Widjaja v. Nicholson*, 2006 WL 2871634, at *7 n.5 (D. Colo. Oct. 4, 2006) ("in ruling on [a] motion to dismiss, [a] court need not accept factual claims that are internally inconsistent"); *Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993) (similar).

In *In re Livent, Inc. Noteholders Securities Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001), the court determined that it "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely…." *Id.* at 405. Particularly in the context of a fraud claim, where "only plaintiffs are in a position to assert the state of their awareness and reliance as regards facts vital to their case," contradictory allegations must be treated as admissions. *Id.* at 407; *see also Kelley v. Rambus, Inc.*, 2008 WL 1766942, at *7 (N.D. Cal. Apr. 17, 2008). Thus, just as in *Livent*, the complaint must be dismissed because its own allegations defeat the theory on which the claims are predicated. 151 F. Supp. 2d at 407.

Equally fatal, Foy's "pay to play" allegations are themselves incoherent. The complaint asserts that supposedly improper political contributions were made in February 2007 (Compl. ¶ 74), and that these contributions were the "but for" cause of the ERB and SIC's decision to invest in VF (*id.* ¶ 81). Yet at the same time, Foy acknowledges that the investment decision long *preceded* those challenged contributions – the decision was made in May 2006 (*id.* ¶ 69), eight months before Gov. Richardson even announced his candidacy (*see* http://www.richardsonforpresident.com/newsroom/pressrelease_archive (Jan. 20, 2007)), and nine months before the donation occurred. Foy offers no explanation as to how a political contribution in February 2007 could have caused an investment that had already been committed nine months earlier, or how an investment decision in 2006 could have been influenced by a

14

political campaign that was still months away from beginning.  When, as here, the plaintiff's rendition of the facts makes loss causation impossible, the claim must be dismissed.  *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1109 (N.D. Okla. 2003); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008) (claims must be plausible to survive motion to dismiss).

## IV.  THE CLAIMS CANNOT SURVIVE IN THE FACE OF EXPRESS WRITTEN DISCLOSURES IN THE VF OFFERING MEMORANDUM

There is yet another critical reason why the complaint must be dismissed:  its allegations depend on disregarding the 200+ page offering memorandum by which the VF investment was sold ("OM", attached as ***Exhibit A Pts I and II***), and assuming the very opposite of the careful risk disclosures that were painstakingly laid out.  The offering memorandum – which ERB and SIC each acknowledged receiving – on its face demonstrates that Foy's fraud claim is untenable.

### A.    The Court Can and Should Consider the Offering Memorandum

In determining whether to dismiss the complaint under Rule 12(b)(6), the Court can and should consider the contents of the offering memorandum because it is central to Foy's claims and implicitly referred to in the complaint.  *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (on a 12(b)(6) motion, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (citation omitted); *Martin v. Central States Emblems, Inc.*, 150 Fed. Appx. 852, 858 n.6 (10th Cir. 2005) (unpublished) (document "implicitly referred to in the complaint" may be considered on 12(b)(6) motion); *Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 824 (N.D. Ill. 2008) ("the Court may consider extrinsic documents in a 12(b)(6) motion where the documents are implicitly referenced within the complaint").

The key inquiry is not whether the document is attached to the complaint but whether it is central or integral to the plaintiff's claims.  *See*, *e.g.*, *Alvarado*, 493 F.3d at 1216 ("there would

have been no error for the court to consider the court order sealing Alvarado's and Flores's identities, as the sealing order was 'central' to Plaintiffs' claims ...."); *Midgley v. Rayrock Mines, Inc.*, 374 F. Supp. 2d 1039, 1048 (D.N.M. 2005) (considering letters submitted by defendant with its motion to dismiss, without converting it to a summary judgment motion, because "[t]hese letters are central to [plaintiff]'s claim); *Sec'y of State For Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").  Otherwise, a plaintiff with legally deficient claims could prevent dismissal of his complaint simply by failing – as Foy did here – to attach or explicitly cite the dispositive documents.  *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited. Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

The VF offering memorandum was the means by which the VF investment was sold; it is plainly central to the allegations of fraud.  And while Foy was careful not to cite the offering memorandum by name, he implicitly references it numerous times in the complaint because he quotes from it liberally (albeit without attribution).  *Compare, e.g.*, Compl. ¶ 46 § 30 (defendants represented that "Vanderbilt was a research driven firm") *with* OM at 2, 46 ("Vanderbilt Capital is a research-driven firm"); Compl. ¶ 46, § 34 (defendants represented that "the investment

would be managed by a board of directors with an independent majority") *with* OM at 76 ("our Board will consist of a majority of independent directors"); Compl. ¶ 46 § 38 (defendants represented that "the directors will establish an audit committee, compensation committee, and a nominating and corporate governance committee") *with* OM at 11 ("The directors will also establish various board committees, including an Audit Committee, a Compensation Committee and a Nominating and Corporate Governance Committee").

Under these circumstances, the Court can and should evaluate the complaint in the context of that offering memorandum. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Despite the fact that the documents attached to defendant Westinghouse's motion to dismiss were [not]…attached as exhibits to the complaint or incorporated by reference in it, the district court was entitled to consider them in deciding the motion to dismiss. The stock purchase agreement, Bowles' offering memorandum, and the warrant were documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit. It did not lack notice of those documents; these papers were integral to its complaint."); *Lilliard v. Stockton*, 267 F. Supp. 2d 1081 (N.D. Okla. 2003).

### B.    The Complaint Is Untenable in Light of the Disclosures in the Offering Memorandum

The offering memorandum's detailed disclosures (described below) negate any possible claim of fraud because any purported reliance on statements at odds with those disclosures would necessarily be unjustifiable. Under New Mexico law, to prove fraud a plaintiff must establish that the defendant knowingly or recklessly made a false representation of fact with intent to deceive, and that the plaintiff "suffered damages that were proximately caused by justifiable reliance on [defendant]'s misrepresentation." *See Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22,142 N.M. 209, 164 P.3d 90; *see also Cargill v.*

*Sherrod*, 96 N.M. 431, 432, 631 P.2d 726, 727 (1981); *Coronado Credit Union, Inc. v. Bevill, Bresler & Schulman Inc.*, No. CIV-80-216 C, 1983 WL 1420, at *15 (D.N.M. Dec. 23, 1983) (dismissing fraud claim because these elements were not met).

If a sophisticated buyer of securities ignores the cautionary language in an offering memorandum to rely on other claimed misrepresentations, that reliance is unjustifiable as a matter of law, and the elements of a fraud claim cannot be satisfied. *See, e.g., Adler*, 648 N.E.2d at 232-33 (dismissing fraud claim because plaintiff could not have justifiably relied on oral representations "directly contrary to what was stated in the offering memorandum); *Hecox v. Dickinson & Co.*, 1987 WL 14502, at *9-11 (D. Kan. 1987) (plaintiff failed to prove that he justifiably relied on alleged misrepresentations by defendant, as required to prove fraud under Kansas law, where alleged misrepresentations were "not justified in light of the prospectus").

This rule is known as the "bespeaks caution" doctrine: if the disclosures in an offering memorandum provide "sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue," then any otherwise potentially misleading effect of other statements is nullified as a matter of law because the offering memorandum bespeaks caution. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120-21 (10th Cir. 1997); *see also Kaufman v. Trump's Castle Funding*, 7 F.3d 357, 364 (3d Cir. 1993) ("'bespeaks caution' is essentially shorthand for the well-established principle that a statement or omission must be considered in context"); *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 805 (1st Cir. 1987) (reliance not justifiable under Massachusetts law where sophisticated party alleged that it relied on "oral representations completely at odds with the offering memorandum …. The contradictions fairly le[a]pt from the pages of the offering memorandum…."); *Allyn v. Wortman*, 725 So. 2d 94, 102-03 (Miss. 1998) (applying bespeaks caution doctrine to state law securities

fraud claims); *Adler v. William Blair & Co.*, 648 N.E.2d 226, 232 (Ill. Ct. App. 1995) (dismissing fraud claim because plaintiff could not have justifiably relied upon alleged oral misrepresentations in light of written information contained in the [private placement memorandum] and plaintiffs' acknowledgement that they signed a subscription agreement warranting that they relied only on information contained in the PPM in making investment).

Here, ERB and SIC signed a subscription agreement (OM III-1) warranting that they are sophisticated investors who were aware of the risks incident to their investment; were capable of assessing those risks; had received the offering memorandum; and were relying solely upon the offering memorandum and their independent investigation, and not upon representations outside the offering memorandum, in deciding whether to invest. *See* OM III-1 though -10, ¶¶ 5, 11, 14-17. The very first sentences of the offering memorandum (OM ii) warned investors:

> You should rely only on the information contained in this offering memorandum. Neither we nor the initial purchasers have authorized anyone to provide you with information different from that contained in this offering memorandum.

Therefore, Foy may not claim that ERB or SIC relied on some other representations. *See*, *e.g.*, *Rissman v. Rissman*, 213 F.3d 381, 383 (7th Cir. 2000) ("Securities law does not permit a party to a stock transaction…to say, in effect, 'I lied when I told you I wasn't relying on your prior statement' and then to seek damages for their contents."). Moreover, regardless of what Foy may now claim as to whether the ERB or SIC in fact read the offering memorandum, the law would still impute to them knowledge of the risks disclosed in it. *See*, *e.g.*, *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518 (10th Cir. 1983) ("[I]t is our view that knowledge of information contained in a prospectus or an equivalent document…should be imputed to investors who fail to read such documents. We thus hold that [plaintiff] must be charged with constructive knowledge of the risks and warnings contained in the Private Placement Memorandum.").

1.     **The Disclosures in the Offering Memorandum Make Foy's Claims Untenable**

Even a cursory review of the VF offering memorandum demonstrates that ERB and SIC could not possibly have justifiably relied upon the misrepresentations alleged in the complaint. The offering memorandum contained 21 pages of risk disclosures in a separately denominated section labeled "RISK FACTORS" (OM at 17-37), the very first sentence of which warned, in italics, "*An investment in the Trust's common shares involves a high degree of risk*" (OM at 17). The offering memorandum also contained a summary of those risk factors elsewhere in the document (OM at 5) and a boldfaced warning on the cover that **"Investing in the Trust's common shares involves risks.  See "Risk Factors" beginning on page 17 of this offering memorandum for risks that we think may be significant** …." Many of the misrepresentations alleged in the complaint directly contradict the disclosures in the offering memorandum, and it would have been *per se* unjustifiable for the ERB or SIC to rely on these alleged misrepresentations (if they were even made).  *See Grossman*, 120 F.3d at 1122 ("an investor may not rely on oral misstatements when the risks of an investment are adequately disclosed in an accompanying private placement memorandum").  To pick just a few examples:

**Share price.**  The offering memorandum warned that "[w]e cannot offer any assurance as to…the price that our shareholders may obtain for their common shares" (OM at 25), "the market price of the common shares may be highly volatile and could be subject to wide fluctuations after this offering" (OM at 26), and "[t]here is no public market for the Trust's common shares and a market may never develop, which could result in purchasers in this offering being unable to monetize their investment" (OM at 25).  It also specified at great length the "specific risks" associated with each of the different asset classes VF might hold.  (OM at 30-33).

20

Given these and similar disclosures, the ERB and SIC could not justifiably rely on any alleged statements regarding the future value of the investment (Compl. ¶46, §§1, 6, 48). *See Glassman v. Computervision Corp.*, 90 F.3d 617, 626 n.11 (1st Cir. 1996) ("First, the Prospectus provided investors with explicit and specific warnings as to factors that might cause the prices of the securities to fall. Second, the Prospectus cautioned investors as to the possibility that no market for the securities would develop or be sustained after the offering. These cautionary statements in the Prospectus are, in and of themselves, reason to find this claim not actionable.").

**Yield.** Contrary to Foy's assertion that the ERB and SIC were promised that "the Vanderbilt investment would yield a return of 20% per annum, and perhaps more" (Compl. ¶ 46 § 48), the offering memorandum specifically warned that "[t]here can be no assurance that we will generate sufficient revenue from operations to pay or expenses and make or sustain distributions to shareholders" (OM at 17). It also disclosed numerous variables that could impact investor returns, including that "declines in the value of collateral" and "increases in defaults and poor operating results of borrowers" "may reduce [the] earnings and, in turn, cash available for distribution to our shareholders" (*id.*). "Fluctuations and changes in interest rates" was another variable that "may causes losses and negatively impact our financial condition and results of operations" (*id.* at 18). Any reliance on a supposed promise about a particular rate of return would therefore be unjustified. *See*, *e.g.*, *Kennedy*, 814 F.2d at 805 ("When they closed their eyes and passively accepted the contradictions between Sinclair's statements and the offering memorandum, appellants could not be said to have justifiably relied on the misrepresentations.").

**Leverage.** The Offering Memorandum's disclosure that "[o]ur CDO subsidiaries operate on a highly leveraged basis," and that "our policies do not limit the amount of leverage we or any of our CDO subsidiaries may incur" (OM at 17) directly contradicts Foy's claim that "[t]he

defendants made repeated misrepresentations about the amounts of leverage in this investment" (Compl. ¶ 56). *See*, *e.g.*, *Recupito v. Prudential Sec., Inc.*, 112 F. Supp. 2d 449, 457 (D. Md. 2000) (applying bespeaks caution doctrine and dismissing complaint where "the Prospectus warned investors of the very risks Plaintiff claims were not disclosed," including disclosures regarding substantial amounts of leverage incurred).

**Conflicts.** The offering memorandum's disclosures as to potential conflicts between the interests of Vanderbilt and its shareholders (OM at 13-14, 21) renders unjustifiable any claimed reliance on representations that Vanderbilt "had eliminated any conflicts of interest" (Compl. ¶ 46 § 3). *See Berson v. Hardiman*, 1999 WL 754703, at *7 (N.D. Ill. Sept. 13, 1999) (dismissing complaint under bespeaks caution doctrine; "because Defendant disclosed the potential conflict, Plaintiff was well aware of [defendant]'s interest at the time of his initial investment").

**Board oversight.** The disclosures included specific warnings that VF's board of directors would "approve broad business guidelines" but would "not approve each business decision" and would not "review each proposed purchase and/or sale" (OM at 24). These warnings are incompatible with any claimed reliance upon alleged representations that "the investment would be managed by [the] board of directors" and that "the directors will supervise the activities of the investment" (Compl. ¶ 46, §§ 34, 37). *See*, *e.g.*, *Steinberg v. PRT Group, Inc.*, 88 F. Supp. 2d 294, 305 (S.D.N.Y. 2000) ("In light of these explicit risk disclosures [about personnel], plaintiffs' allegations … fail as a matter of law").

**Public market.** Contrary to Foy's allegation that the ERB and SIC were promised that VF's shares "would be listed on European exchanges within 2 weeks after the State bought them" (Compl. ¶¶ 46, § 9), the offering memorandum expressly warned that "there can be no guarantee that we will ever conduct an initial public offering of our shares" (OM at 26). *See In*

*re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *5 (S.D.N.Y. Nov. 25, 2003) (dismissing claims under bespeaks caution doctrine where "defendants gave no guarantees when making the complained of statements").

      **Registration.**  The disclosure that Vanderbilt would "use our *best efforts* to file a registration statement within 190 days" (OM at 27, emphasis added), renders unjustifiable any reliance by the ERB or SIC on the alleged representation that "Vanderbilt *would* register the shares with the SEC within 190 days"(Compl. ¶ 46, § 10 (emphasis added)).  *See Berson*, 1999 WL 754703, at *2, 7, 8 (cautionary language, including disclosure that "the Company will use its *best efforts* to obtain a liquor license," precluded Plaintiff's claim that he relied upon misrepresentations about the time needed to obtain the liquor license, because document's cautionary language trumped any contrary verbal representation) (emphasis added).

      Because the offering memorandum contained cautionary disclosures about each of the risks that Foy claims were misrepresented, Foy's claims must be dismissed.  *Grossman*, 120 F.3d at 1120-23 (applying bespeaks caution doctrine and affirming dismissal of fraud claims); *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Dist. 1995) (affirming dismissal of fraud complaint where offering documents "contain[ed] extensive cautionary language" which demonstrated that "any reliance on the alleged misrepresentations by plaintiffs was unreasonable").

      **2.**      **The ERB and SIC Could Not Have Justifiably Relied Upon Alleged Representations Not Included in the Offering Memorandum**

      Apart from the direct contradictions between Foy's complaint and the warnings in the offering memorandum, Foy also alleges that the defendants made supplemental misrepresentations regarding a variety of other matters, including outside investors' activities (Compl. ¶ 46, §§ 18, 32); the core competencies of the investment's sponsors (¶ 46, § 24); steps

taken to minimize the potential for misrepresentation of the quality of loans or assets (¶ 46, § 41); the value and documentation of the CDOs and underlying loans (¶ 46, §§ 47; 55); the defendants' investment in the loans (¶ 53); and the screening process for loan applications (¶ 54). Furthermore, Foy alleges that the ERB and SIC relied on the defendants' purported misrepresentations regarding VF's business strategy, its operational policies, and the riskiness of its business activities (*see id*. ¶¶ 46, 53-55, 57).

But the offering memorandum included express cautions about VF's lack of operating history, the fact that VF "will operate with a high degree of leverage," and that "[d]eclines in the credit quality of our CDO subsidiaries' assets may adversely affect … results … earnings and … cash available for distribution to our shareholders." (OM at 17).  The offering memorandum also contained several pages of disclosures and warnings focused specifically on the market "risks related to CDOs," including that the "equity interests" held by VF "will lose their entire value before the more senior securities issued by the CDOs suffer impairment to principal" and that "[t]he use of CDO financings with over-collateralization requirements may have a negative impact on our cash flow." (OM at 28).  The disclosures went on with several pages of additional disclosure describing each of the different types of CDO assets that VF might invest in, and the characteristics and risks inherent in each one.  (OM 30-33).

In light of these numerous warnings, which bespeak caution about the investment, the ERB and SIC could not have justifiably relied on supposed promises to the contrary.  What is more, none of the additional representations alleged by Foy appears in the offering memorandum, and that document expressly warned investors (and the ERB and SIC acknowledged) that they could not rely on any representations other than what was in the offering memorandum.  (OM ii, III-5 at ¶ 15).  Those warnings are fatal to Foy's claim. *See*

*Rissman*, 213 F.3d at 383-84 (where plaintiff's claim "rests on [defendant]'s oral statements," yet plaintiff acknowledged in the stock purchase agreement that he had *not* relied on these statements, the "written anti-reliance clause precludes any claim of deceit by prior representations"); *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 -45 (7th Cir. 2002) ("[P]arties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a 'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other.  Since reliance is an element of fraud, the clause … precludes a fraud suit…."). The extensive cautionary language of the VF offering memorandum compels dismissal of the complaint.

## V.    THE UNFAIR PRACTICES ACT CLAIM MUST BE DISMISSED

In one sentence at the end of the complaint, Foy alleges that "In addition to violating FATA, by the acts and omissions set forth in this complaint, the defendants have also violated the Unfair Trade Practices Act, §§ 57-12-1 *et seq….*" (Compl. ¶ 87).  This cursory allegation is entirely without merit and this claim must be dismissed.

### A.    Foy Cannot Assert a UPA Claim On Behalf of the State

Unlike FATA, the UPA does not grant a private citizen the right to bring an action on behalf of the state.  New Mexico's courts have not considered whether a *qui tam* action can be implied in the UPA.  However, cases from other jurisdictions establish that *qui tam* actions should be allowed only when they are expressly provided for.   "[F]ederal courts have consistently held that *qui tam* actions do not exist at common law and this can only be maintained under express or strongly implied statutory authority."  *Marra v. Burgdorf Realtors, Inc.*, 726 F. Supp. 1000, 1012 (E.D. Pa. 1989).   Courts have repeatedly cautioned against implying a *qui tam* right.  *See, e.g., id.* at 1013-14; *Sierra Club v. Andrus*, 610 F.2d 581, 591 n.17 (9th Cir. 1979), *rev'd on other grounds by California v. Sierra Club*, 451 U.S. 287 (1981); *U.S.*

*ex rel. Burnette v. Driving Hawk*, 587 F.2d 23, 24-25 (8th Cir. 1978); *Connecticut Action Now,*

*Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84 (2d Cir. 1972); *Bass Anglers Sportsman's Soc'y of*

*Am. v. U.S. Plywood-Champion Papers, Inc.*, 324 F. Supp. 302, 306 (S.D. Tex. 1971).

Nothing in the language of the UPA suggests that a *qui tam* action is appropriate. To the

contrary, the UPA expressly allows the Attorney General to bring a claim in the name of the state

for violations of the statute, NMSA 1978, § 57-12-8(A), which is a strong indication that a *qui*

*tam* action should <u>not</u> be implied. *See Marra*, 726 F. Supp. at 1013 ("even statutory language

that seems to grant a *qui tam* action will not be held to do so if other language places

enforcement in the hands of governmental authorities").

### B.    The State Is Not a "Person" Covered by the UPA

In addition, the state is not a "person" under the UPA, precluding it from proceeding

directly against any defendant. The UPA provides a private right of action for any "person,"

NMSA 1978, § 57-12-10(B) (2005), and defines a "person" as "natural persons, corporations,

trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint

ventures, or syndicates." *Id.* § 57-12-2(A) (2003). Although New Mexico's courts have not

decided whether the state is a "person" under the UPA, cases interpreting the term "person" in

other statutes makes it clear that a New Mexico court would not find the state to be a "person" in

this case. *See Southern Union Gas Co. v. New Mexico Public Serv. Comm'n*, 82 N.M. 405, 405-

07, 482 P.2d 913, 913-14 (1971), *overruled on other grounds by De Vargas Sav. & Loan Ass'n*

*v. Campbell*, 87 N.M. 469, 535 P.2d 3120 (1975) (United States not a "person" under NMSA

1978, § 68-3-2); *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 11, 131 N.M.

522, 39 P.3d 739.

**C.**     **Nor Is the Sale of VF Shares a Transaction Covered by the UPA**

In addition, the sale of VF securities to SIC and ERB simply are not "goods and services" under the statute, further mandating dismissal.  *Nanodetex Corp. v. Sandia Corp.*, No. 05-1041, 2007 WL 4356154, at *5-6 (D.N.M. Jul. 26, 2007) (alleged misrepresentation to potential investor not covered by UPA because investor is not a buyer of goods and services).

Section 57-12-4 expressly states that the UPA should be construed similarly to the Federal Trade Commission Act ("FTCA"), and the FTCA "has been consistently interpreted to preclude coverage of securities claims in the overwhelming majority of state and federal courts addressing this issue."  *Crowell v. Morgan, Stanley, Dean Witter Servs., Co.*, 87 F. Supp. 2d at 1287, 1294 (S.D. Fla. 2000).  *See also Greene v. Horizon/CMS Healthcare Corp.*, No. CIV 97-114, slip op. at 2, 18 (D.N.M. July 13, 1998) (the "sale of stock is neither a good nor a service" to which the UPA applies); *accord Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) (same under Hawaii law); *Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31 (D. Mass. 1983) (same under Massachusetts law).

**D.**     **The UPA Claim Fails to Comply With Rule 9(b)**

Finally, the UPA claim – which contains even less detail than the FATA claim – also fails for not complying with Rule 9(b)'s particularity requirement.  *See Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 669 F. Supp. 1244, 1255-56 (S.D.N.Y. 1987) (dismissing claim under New Mexico UPA for failure to comply with Rule 9(b)).

CONCLUSION

For all of the foregoing reasons, Foy's complaint should be dismissed with prejudice

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By   */s/ Andrew G. Schultz*                                    .
    Andrew G. Schultz
Post Office Box 1888
Albuquerque, New Mexico  87103-1888
Telephone:  (505) 765-5900
Facsimile:    (505) 768-7395
aschultz@rodey.com


FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
LLP

By   */s/ Peter L. Simmons*                                  .
    Peter L. Simmons
One New York Plaza
New York, NY  10004-1980
Telephone:  (212) 859-8000
Facsimile:    (212) 859-4000
Peter.Simmons@friedfrank.com

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
LLP

By   */s/ John T. Boese*                                       .
    John T. Boese
    Douglas W. Baruch
1001 Pennsylvania Ave., NW – Suite 800
Washington, DC  20004
Telephone:  (202) 639-7000
Facsimile:    (202) 639-7008
John.Boese@friedfrank.com
Douglas.Baruch@friedfrank.com


*Attorneys for Defendants Vanderbilt Capital Advisors, LLC, Vanderbilt Financial, LLC, Vanderbilt Financial Trust, Osbert M. Hood, Ron D. Kessinger, Robert P. Nault, James. R. Stern, Stephen C. Bernhardt; Kurt W. Florian, Jr., Anthony J. Koenig, Jr., Mark E. Bradley and Pioneer Investment Management USA. Inc.*

MADISON HARBOUR & MROZ, P.A.

By  */s/ William C. Madison*                                      .
    William C. Madison
201 Third Street NW – Suite 1600
Albuquerque, New Mexico  87102
Telephone:  (505) 242-2177
wcm@madisonlaw.com

FIGLIULO & SILVERMAN, P.C.

By  */s/ Peters S. Silverman*                                      .
    Peter S. Silverman
10 South LaSalle Street  – Suite 3600
Chicago, Illinois  60603
Telephone:  (312) 251-5275
Facsimile:  (312) 251-4610
psilverman@fslegal.com

*Attorneys for Defendant Patrick A. Livney*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2009 the foregoing *Vanderbilt Defendants and Patrick Livney's Motion to Dismiss Complaint and Memorandum of Law in Support* was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Victor R. Marshall
victor@vrmarshall.com

David K. Thomson and Nan E. Erdman
dthomson@nmag.gov
nerdman@nmag.gov

Peter L. Simmons, Samuel P. Groner, John T. Boese and Douglas W. Baruch
Peter.Simmons@friedfrank.com
Samuel.Groner@friedfrank.com
John.Boese@friedfrank.com
Douglas.Baruch@friedfrank.com

William C. Madison
wcm@madisonlaw.com

Mark F. Sheridan
msheridan@hollandhart.com

Spencer Reid and David W. Peterson
SR@Keleher-Law.com
DWP@Keleher-Law.com

Walter J. Melendres and Stephen S. Hamilton
wmelendres@montand.com
shamilton@montand.com

Mel Yost and Christopher Grimmer
mey@santafelawyers.com
cmg@santafelawyers.com

Charles R. Peifer and Lauren Keefe
cpeifer@peiferlaw.com
lkeefe@peiferlaw.com

Paul Fish
pfish@modrall.com

Thomas M. Hnasko
thnasko@hinklelawfirm.com

Martin R. Esquivel and Bryan C. Garcia
mesquivel@narvaezlawfirm.com
bgarcia@narvaezlawfirm.com

Sam Bregman and Eric Loman
sam@bregmanlawfirm.com
eric@bregmanlawfirm.com

Faith Kalman Reyes
freyes@simmonsfirm.com

Douglas A. Baker
dbaker@atb-law.com

Michael W. Brennan
mwbrennan@qwestoffice.net

Peter Silverman
Joseph Donado
psilverman@fslegal.com
jdonado@fslegal.com

Stephen M. Simone
ssimone@srw-law.com

David F. Cunningham
dfc@catchlaw.com


RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By__ /s/ Andrew G. Schultz_____.
        Andrew G. Schultz